Benjamin A. Alderson, Plaintiff in Error, *v.* St. Charles County, Defendant in Error.

#### January 14, 1879.

1. A County Court has no power to bind the county to all contracts which the former may choose to make.

2. The Swamp-Land Act provides that after the practicability of the work shall have been judicially determined by the County Court, commissioners shall be appointed; and where the County Court appoints commissioners, upon whose report the work is declared to be impracticable, such commissioners have no recourse against the county for pay or expenses.

ERROR to St. Charles Circuit Court.

*Affirmed.* .　　　　　　　　　　　•

H. C. LACKLAND, for plaintiff in error, cited: *Hase* v. *Warren County*, 3 Mo. App. 567; *Smith* v. *Clark*, 54 Mo. 58; *Marcy* v. *Oswego*, 2 Otto, 637; *Kiley* v. *Forsee*, 57 Mo. 390; *Young* v. *St. Louis*, 47 Mo. 492.

WM. A. ALEXANDER, for defendant in error, cited: *Miller* v. *Iron County*, 29 Mo. 192; *The State* v. *St. Louis*, 34 Mo. 546; *Reardon* v. *St. Louis*, 36 Mo. 555; *The State* v. *Shortridge*, 56 Mo. 126; *Campbell* v. *Polk*, 49 Mo. 214; *Kingsbury* v. *Pettis*, 48 Mo. 208.

BAKEWELL, J., delivered the opinion of the court.

This was an action for services rendered by plaintiff to defendant, and for expenses incurred by plaintiff as commissioner under the Swamp-Land Act. The petition alleges that on August 12, 1874, the County Court of St. Charles County made an order appointing the plaintiff and two others commissioners in the matter of draining and letting out contracts for draining a contiguous body of swamp land in St. Charles County, called the Ford Swamp, which appointment was reaffirmed on October 13, 1874, one Watson being added to the former commissioners; that plaintiff performed the services and incurred the expenses set forth in an account filed with the petition; but that, before any taxes were assessed for the work, and after the services in question were rendered, the County Court rescinded its order, revoked the appointment and stopped the work, and refused to pay any of the commissioners. The account is for various items of services and expenses rendered and incurred by plaintiff during October, November, and December, 1874, amounting altogether to $70. The answer is a general denial. It also sets up that the act in question is in violation of the Constitution of the State, and that the alleged appointment was for that reason, and for other reasons set out at length, null and void. The trial was by the

court without a jury. There was a finding and judgment for defendant, and plaintiff brings the cause here by writ of error:

On the trial, the parties introduced in evidence the records of proceedings held from time to time in the County Court of St. Charles in regard to the matter in controversy, from which it appeared that on August 12, 1874, four persons claiming to own together about three thousand seven hundred and ninety-three acres of the land in question presented to the County Court a petition, accompanied by proof of notice by publication, in which they alleged that the drainage in question was practicable, offered to pay their proportion of the expense, and prayed that the work be ordered. On the same day, plaintiff and two others were appointed commissioners by the County Court to examine the premises, decide the location and dimensions, make estimates of the costs, and report at an adjourned term to be held on the first Monday of September. It was further ordered that the petitioners execute a bond to cover all costs of this proceeding. On the same day, the bond was filed and approved. It is executed by two of the petitioners, with another person as surety, in the sum of $300, conditioned that, should the County Court decide the proposed improvement to be impracticable, the parties to the bond will pay all costs and expenses, including pay of commissioners incurred by the preliminary survey. The commissioners then qualified; and on September 8th they filed their report, which purports to be accompanied by maps, profiles, and estimates of costs not set out in the record. The report is to the effect that, after survey made by an engineer, and careful examination by the commissioners, they find the work impracticable; that the swamp could not be kept dry at the time of plowing, without a system of pumping; and that the cost would be out of all proportion to the benefits. The commissioners decline to recommend the work. On September 18th a remonstrance was pre-

sented to the County Court, signed by forty-two objectors, who do not say that they are owners of property to be affected by the proposed work. On October 13th a new commissioner was appointed, and on October 20th the commissioners were directed to invite bids. In accordance with this order, they issued a notice on October 23d for bids for the work. On January 7, 1875, objections in writing to the proposed work were presented to the County Court by eighteen objectors, claiming to be owners of lands affected. The objectors were heard on January 23d, and the court, having considered the matter, on that day found that a majority in interest have not given satisfactory evidence that the proposed improvement is practicable, and have not declared their willingness to pay their just proportion of expenses of the improvement; it was therefore ordered that the appointment of commissioners be revoked. Evidence was also introduced by plaintiff that, on September 8th, October 13th, and December 16th, accounts of some of the commissioners, for services rendered by them and costs incurred under their appointment, were allowed by the County Court, and warrants ordered upon the treasury for the amounts allowed. There was also evidence as to the value of the services, and that they were rendered, and, generally, that the bill of items filed with the petition was correct.

The act in regard to swamp lands (Wag. Stats. 872) provides (sect. 30) that when a majority in interest of the owners of any contiguous body of swamp lands shall, after giving notice prescribed in the law, petition the judges of the County Court of the county in which the lands are situated to have the lands reclaimed, and shall give satisfactory evidence that the proposed improvement is practicable, and shall declare their willingness to pay their just proportion of the expense of the improvement, it shall be the duty of the judges to appoint two commissioners; the road commissioner, *ex officio*, to be a member of the board (sect. 31).

These commissioners are to examine the premises, decide upon the location, character, and dimensions of the work necessary to effect the result desired, and to make an estimate of the cost (sect. 32). They are to invite and pass upon bids for the work, and (sect. 33) to condemn property and assess damages, and take possession of the property condemned (sect. 34). They are to make descriptive lists of the land to be benefited, and of its owners, and of its prospective value after completion of the work; to estimate the benefit to the county at large, and to report this and the cost of the work to be completed in one year, including preliminary surveys, damages, compensation of commissioners at $3 per day, and all costs and incidental expenses of the proposed improvement. On receiving this report (sect. 35), the judges are to appoint a day to hear objections against the assessments, estimates, or appointment of commissioners, or any other matter in the report, and may then confirm, amend, or reject the report. And if any part of the report is rejected, new commissioners must be appointed. The report (sect. 36) is then passed to the county assessor, who assesses the estimated benefits to the county at large, and the residue of cost against the individuals benefited. The county, at its option, may pay the estimated benefits out of the treasury; in which case it is not assessed. All costs and expenses of making the improvement (sect. 37) are to be paid by the county out of the proceeds of taxes assessed and collected for that purpose; and it is made the duty of the county clerk, on presentation of any account, duly approved by any two commissioners, for labor, service, or materials expended in prosecution of improvements, to make orders on the county treasurer for the amount, payable out of the proceeds of the taxes assessed and collected for that purpose.

It is manifest that the appointment of plaintiff and his co-commissioners in the present case was without any warrant of law. The Swamp Act provides that after the ques-

tion of the practicability of the work shall have been judicially decided by the County Court, on application by a majority of the persons in interest, commissioners shall be appointed, with certain defined powers, to carry on and complete the work already determined upon. In the present case, on application of five persons, representing together, on their own statement, less than four thousand acres, three of whom represented less than two hundred acres, without any examination whether or not the petitioners represented a majority in interest, and without any examination, or consideration, or judicial determination of this question or of the question as to the practicability of the work, these commissioners were appointed to make examination of the premises and of the work, and to make estimates, not with a view to inviting bids as the law requires, and then proceeding with the work already determined upon, but with a view to making a report to the County Court from which that court should determine whether or not the work was possible. The County Court afterwards, on coming in of the report and on hearing the report of these commissioners, examined the matter, and found that the application for the improvement was not made by a majority of the parties in interest, and thereupon revoked the appointment of plaintiff and his co-commissioners. The law nowhere provides for the appointment of commissioners to report as to the practicability of the work, but provides that that question is to be examined and determined before commissioners are appointed at all. The commissioners are to proceed with the work when its execution is determined upon. No provision exists in the law for the payment of any commissioners, or of any person in any way engaged in the work, except out of funds to be collected after all estimates are made and the necessary property is condemned, and the return made to the assessor, and the tax levied and collected. If the practicability of the work cannot be judged without an examination and report by experts, it would seem that

such a report and examination is a part of the evidence to be introduced before the County Court, at the time set for hearing of the application, by the majority of parties in interest who desire the work to be done ; and that it is a part of the costs of that proceeding, to be paid by the applicants, in the absence of any authority to the County Court to allow it as part of the costs of the successful application. In this case the application was unsuccessful, and it does not appear that any portion of the costs ought to be borne by St. Charles County.

The County Court is not the general agent of a corporation called a county, which it has a right to bind to any contract concerning the corporation. Its power is derived from the State, and it can only bind that territorial subdivision of the State called a county by virtue of authority of law derived from the State government. *Reardon* v. *St. Louis County*, 36 Mo. 555. It may appropriate the money of the county to certain objects, because it has express power given to it by law to do so. But in the absence of an express power given by statute, the County Court cannot bind the county to pay the expenses of a commission appointed to examine and report upon the question of the practicability of the drainage of lands under the Swamp-Land Act. The expenses of commissioners appointed under that act, as well as all other expenses of the work, presuppose the progress of the work, and can only be collected out of the special fund created by the assessment of taxes based upon estimates of prospective benefits to be derived from the work itself.

It is not necessary to consider the instructions given and refused by the learned judge of the trial court. The judgment for defendant was the only judgment that could legally be given on the evidence in the case, and it is affirmed. All the judges concur.