E. DWIGHT EATON ET AL., Appellants, *v.* COUNTY OF ST.
CHARLES, Respondent.

December 23, 1879.

1. The jurisdiction of County Courts being limited, and their powers under
the Swamp-Land Act being in derogation of common law, the record
must show facts conferring jurisdiction; and in a collateral attack upon
orders made in a proceeding under that act, such facts will not be pre-
sumed.

2. Jurisdiction to appoint commissioners to make a contract for draining lands
under the Swamp-Land Act can be acquired by the County Court only
by giving the notice required by statute, after the filing of a petition by
the required number of parties in interest.

3. The appointment of such commissioners without such notice is void, and
contracts made by them as such commissioners are also void.

APPEAL from the St. Louis Circuit Court.
*Affirmed.*

T. A. & H. M. POST for the appellants: Where the court
has no discretion, but must render judgment according to
the facts and the law, its action is judicial. — *In re Saline
County*, 45 Mo. 52; *Cooper County* v. *Geyer*, 19 Mo. 257;
28 Mo. 37; 42 Mo. 348; 44 Mo. 216. In the exercise of

its judicial functions, the County Court is a court of record, and the rules and presumptions applying to courts of record and their judgments apply in full force. — Freem. on Judg., sects. 124, 132. The County Court having at one time decided affirmatively upon the jurisdictional questions, and having appointed commissioners in pursuance thereof, did not have power at a subsequent term to inquire into these same facts and declare that they did not exist. — *Ashby* v. *Glasgow*, 7 Mo. 320; *Hill* v. *City of St. Louis*, 20 Mo. 584; *The State* v. *Sullivan County Court*, 51 Mo. 522; *Peake* v. *Reed*, 14 Mo. 79. The County Court having prevented the completion of the contract, gave the plaintiffs a right of action for a breach of the contract. — *Cort* v. *Ambergate*, 20 L. J. (N. S.) Q. B. 460; *Fitzgerald* v. *Hayward*, 50 Mo. 516; *Green* v. *Mayor*, 5 Abb. Pr. 503; *Beard* v. *Brooklyn*, 31 Barb. 142; *Morgan* v. *Dubuque*, 28 Iowa, 575.

WILLIAM A. ALEXANDER, for the respondent: A county is not responsible for the acts of its agents, except by positive provision of law. — 1 Dill. on Mun. Corp. 95, note 96; *Hamilton County* v. *Mighles*, 7 Ohio, 109; *Miller* v. *Iron County*, 29 Mo. 192; *The State* v. *St. Louis*, 34 Mo. 546; 2 Dill. on Mun. Corp., sect. 762; *Reardon* v. *St. Louis*, 36 Mo. 555. The appointment of commissioners was void for want of jurisdiction in the County Court, and the contract made by them was also void. — *Alderson* v. *St. Charles*, 6 Mo. App. 420.

BAKEWELL, J., delivered the opinion of the court.

This is an action for damages for breach of contract. The contract is alleged to have been made under the provisions of the Swamp-Land Act. Wag. Stats. 872, sects. 30–40. The cause was tried by the court. There was a finding and judgment for the defendant.

It appears from the evidence that on August 12, 1874, Ford and Leighton, representing together three thousand six hundred acres, and three others representing together

one hundred and ninety-three acres, petitioned the County Court of St. Charles County, setting forth that they were the majority in interest of the owners of a contiguous body of swamp and overflowed lands in said county, and asking to have them reclaimed. On the same day the County Court appointed two commissioners, to act in conjunction with the road commissioner, " to examine the premises proposed to be improved, and decide on the location, character, and dimensions of the drains, dikes, or other works necessary, in their judgment, to secure the desired result most effectually, and with due regard to economy and stability, and make, or cause to be made an estimate, as accurate as possible, of the costs of the proposed improvements." The order prescribing the duties of the commissioners is, so far, made in the exact language of the section (Wag. Stats. 872, sect. 31) prescribing the duties of the commissioners. The order further directs that the commissioners shall, before receiving bids, report to an adjourned term, to be held on the first Monday of September next. At the adjourned term, on September 8, forty-two persons presented to the County Court a written protest against the proposed work, saying that if Hostetter's Creek be turned according to the survey, it will overflow and ruin the land of petitioners. On the same day the commissioners file their report, with maps, profiles, and estimates, and say that, after survey by an engineer and careful examination by the commissioners, they find the work impracticable ; that the swamp could not be kept dry without a system of pumping, which would cost more than the benefits. On October 13th, which appears to have been the last day of the August term, the County Court again appointed commissioners. This time it named three : Dames and Alderson, before appointed, and Watson, who takes the place of the road commissioner. We may remark here that the law of 1869 provided (p. 63 ; Wag. Stats. 872, sect. 30) that two commissioners should be appointed to act with the road commissioner, who is to

act *ex officio;* but the amended law, in force at the time of these proceedings, provides (Acts 1873, p. 51) that three commissioners shall be appointed, and says nothing of the road commissioner. This second appointment is made in the exact language of the statute ; nothing is said in it about reporting before receiving bids, or about receiving bids. It does not appear that the former appointment was revoked. These new commissioners, on October 23d, advertised for bids, and awarded the contract to plaintiff Eaton. On November 6th they made with Eaton the contract sued on, which is accompanied with specifications, and provides, amongst other things, that the work is to be done under directions of the commissioners, and to be paid for in land-improvement bonds of the county of St. Charles, payable exclusively from taxes derived from the lands benefited, and in accordance with monthly estimates of the commissioners. There was evidence that the other plaintiffs subsequently became interested with Eaton in the contract. On January 4th Watson resigned as commissioner, and on January 15th Johns was appointed and qualified in his place. On January 5th, eighteen protestors filed in the County Court a notice to the commissioner that they should contest the proceedings to drain these lands as illegal and void, and requesting that all work be suspended until a hearing could be had before the County Court. On November 7th, objections in writing to the proposed work were presented to the County Court by eighteen objectors, claiming to be owners of the lands affected. These objectors set forth, amongst other things, that they never had their day in court ; that the appointment of commissioners was made at an adjourned term, without an opportunity afforded to present objections ; that the majority in interest never petitioned, and never professed willingness to pay their proportion of expense ; that the lands are not a contiguous body of overflowed lands ; that the petitioners for the improvement never gave

evidence that it was practicable; that the appointment of commissioners was illegal, and the contract without authority, and the bond of the contractor insufficient. And on the same day the objectors filed a motion to set aside the order appointing commissioners. On January 23d these objections came on to be heard; and the County Court, being satisfied from the evidence that a majority in interest of the swamp lands proposed to be drained have not joined in the petition, and have not given satisfactory evidence that the proposed improvement is practicable, or declared their willingness to pay their just proportion of the expenses, revoked the appointment of commissioners. Immediately thereafter, Alderson, one of those appointed, notified Eaton that the appointment of commissioners was revoked. On April 5th the plaintiffs notified the County Court that they were willing to proceed with the work. Under the contract and the law, they could do nothing without commissioners to supervise the work. The plaintiffs also introduced evidence tending to show that they had spent $900 in preparation for work, had done work under the contract worth $200, and that they would have realized a profit of $9,000 had they been permitted to proceed.

We have already had occasion to consider the provisions of the Swamp-Land Act in the case of *Alderson* v. *St. Charles County*, 6 Mo. App. 420, which was an action by the same commissioners appointed in the proceedings just set forth, for compensation for their services. We decided in that case that the commissioners could not recover.

The act provides for the payment of the cost of reclaiming swamp land by taxes to be levied and collected for that purpose, in the manner prescribed by the act. The estimated benefits to the county are to be assessed against the county at large, and the residue of the entire cost against the individuals benefited, in certain proportions prescribed by the act. The commissioners appointed by the county for letting out the work, making the descriptive lists, and assess-

ing damages and benefits, and estimating the cost of the work, are not to be appointed by the County Court until it has determined that the work shall be done ; and the County Court has no power to set the matter on foot by appointing commissioners, until the majority in interest of the owners of contiguous swamp-lands, after two weeks' notice in a newspaper of the county (twenty days' notice by hand bills, if there be no such paper), shall have petitioned the judges of the County Court, either in term-time or vacation, to have such lands reclaimed, and shall have given satisfactory evidence that the improvement was practicable, and declared their willingness to pay their just proportion of the expense of the improvement.

In this case these provisions of the law were utterly disregarded. No notice was given ; commissioners were appointed on the day that the petition was presented, without any evidence being presented to the judges that the petitioners were a majority in interest, or any examination or decision of this question, or of the question whether the improvement was practicable. These commissioners, instead of letting out the work, advertising for bids, or making a contract, — under the notion, apparently, that their duty was to examine as to the practicability of the work, — make an examination, and make a full report to an adjourned term of the County Court that the work is utterly impracticable, giving their reasons in detail. In the face of this examination and return, — the only evidence before the judges as to the practicability of the work, — the court again appoints commissioners, who at once advertise for bids, and make the contract for breach of which the county is sued. The parties interested in the matter, and who have had no legal notice, as soon as they can obtain a hearing, but after the contract is made, present evidence, after notice to the contractors, that a majority in interest have not joined in the petition, and have not given evidence that the improvement is practicable, or declared their will-

ingness to pay their proportion of the expenses; and the County Court, being satisfied of these facts, revokes the appointment of commissioners, of which the contractors at once have notice.

It would seem that the citizens of the county have done everything in their power to protect themselves in this matter from the consequences of the illegal action of the county judges; and if they are to be taxed in the matter, it is certainly hard.

But the law is not so. The County Court, which is of statutory origin and of limited jurisdiction, exceeded its powers when it entertained a petition for reclaiming swamp lands, of which notice had not been given as prescribed by law. Those interested in opposing the petition might, on any other theory, be the subjects of a monstrous wrong, for which they would have no remedy whatever; as in the present instance, where, without any evidence that this work was practicable, and in the teeth of the report of men appointed by the court itself to examine and report on this question (for that seems to have been the only object of the first appointment of commissioners, and such was their action), the court appoints commissioners to let out the work. The County Court is the administrative agent of the county, and can only exercise such powers as are conferred on it by statute; the County Courts are only agents of their respective counties in the manner and to the extent prescribed by law, and whenever they step beyond their prescribed limits their acts are void. Any one making contracts with a county through a County Court must take notice of the express, limited, and defined powers of the County Court; and any one making contracts with commissioners whom the County Court is authorized by statute to appoint for the purpose of making contracts for work for which the county is to pay in part, must see to it that those commissioners are duly appointed. *The State* v.

*Shortridge*, 56 Mo. 126 ; *Bauer* v. *Franklin County*, 51 Mo. 205 ; *Saline County* v. *Wilson*, 61 Mo. 237.

In the case before us, it is essential to the jurisdiction of the County Court that the application to redeem swamp lands should be made after notice. A judgment obtained against a party, in any court, without any notice is absolutely void. *Smith* v. *McCutchen*, 38 Mo. 417. The reason is, that without notice the court acquires no jurisdiction. A defective service in a court of general jurisdiction may confer jurisdiction, where the court itself to which the process is returnable declares the service to be sufficient, by rendering judgment upon it. —Freem. on Judg., sects. 130, 131. But even in such courts entire absence of notice is fatal, because jurisdiction is not otherwise acquired. *Kitsmiller* v. *Kitchen*, 24 Iowa, 163. But where an inferior tribunal has jurisdiction to proceed only after notice, it must affirmatively appear that the notice has been given according to law. *McCloon* v. *Beattie*, 46 Mo. 392. The ground of the jurisdiction in such a case must appear upon the face of the proceedings.

The present case is not like that of a defective notice of sale in proceedings before a Probate Court, or before the County Court having probate jurisdiction. There it is held that, to make the sale absolutely void, it must affirmatively appear that notice was not given. But in that case the court already has jurisdiction of the subject; and besides, notwithstanding the limited jurisdiction of the Probate Court, a liberal intendment is indulged in such cases to Probate Courts, because of · the mischief which arises from avoiding such sales, and a presumption of notice is therefore allowed from the fact that the order has been made. *Vallé* v. *Fleming*, 19 Mo. 454.

But in ordinary cases, where the jurisdiction is limited, there is no such intendment and no presumption of notice from the subsequent action of the court in any case ; but

especially can there be no such presumption where the notice is a jurisdictional fact.

The argument that these proceedings cannot be attacked collaterally, can only be maintained by ignoring the well-established distinction between courts of general and of limited jurisdiction, and also the principle that has been held to apply to the action of courts, even of general jurisdiction, when exercising special powers conferred upon them by statute.

In Missouri it has been said (*Howard* v. *Thornton*, 50 Mo. 291) that if the whole record, taken together, does not show that the court has jurisdiction over the defendant, the judgment is a nullity. But it is generally held that jurisdiction must be determined by the record; and if that is silent, the existence of the jurisdictional fact will be presumed, in the case of a court of general jurisdiction, on a collateral attack. An exception is made, however, in the case where the court exercises a jurisdiction dependent on special statutes conferring, as in the case at bar, an authority in derogation of the common law, and specifying the manner in which the authority shall be acquired and employed. The weight of authority is, that judgments arising from the exercise of such jurisdiction are to be supported by no other presumptions than though they originated in courts of limited jurisdiction. *Harvey* v. *Tyler*, 2 Wall. 342. If the particular state of facts necessary to confer jurisdiction does not appear, in the case of inferior courts it will not be presumed, and the judgment will be disregarded until proceedings conferring jurisdiction are shown.

In the case at bar, the County Court, by statute, had jurisdiction over the subject-matter of draining swamp lands in St. Charles; but this was not the only condition precedent to obtaining authority over the particular matter which is the subject of this proceeding. As, in an ordinary action, jurisdiction over the person is obtained by complying with

the provisions of the law as to service of process, and as in a proceeding by attachment, jurisdiction over the *res* is obtained by seizure under process, so, in this case, jurisdiction to appoint commissioners to let out a contract for draining swamp lands could only be acquired by the giving notice as the statute requires, after a petition has been filed by the requisite proportion of parties in interest, calling into action the power of the court to hear and determine the matter in the manner prescribed by law.

We are of opinion that the proceedings of the County Court in the matter of appointing these commissioners was not only irregular, as it clearly was, but absolutely void. The contract made by the commissioners is also, therefore, void, and no action for damages can be maintained against. the county for its breach.

The judgment of the Circuit Court is affirmed. All the judges concur.