BOGGS, Respondent, v. CALDWELL COUNTY, Appellant.

1. A county court has the power to order an index to be made to the books in which deeds are recorded and to allow a reasonable compensation therefor out of the county funds.
2. In order that such an order may be valid and binding upon the county, it is not, it seems, necessary that it should be entered of record. A verbal direction from the justices on the bench or from the presiding justice would be sufficient.
3. At the May term, 1857, of the Caldwell county court an account was presented for allowance against the county. The account was disallowed. At the March term, 1858, by leave of court, testimony touching the same account was introduced. The court having heard the testimony, "adhered to its former decision." An appeal was then taken to the circuit court. Held, that the appeal was well taken; that the rejection of the claim at the May term, 1857, was not like a judgment in a suit between individuals which the court could not open at a subsequent term; that the county court could waive an advantage the county might have.
4. The act of the general assembly of January 21, 1857, (Sess. Acts, 1857,) p. 746,) directing the county court of Caldwell county to audit and allow one W. F. Boggs, for services rendered in making an index of deeds and mortgages of record in said county at the rate of ten cents for each name, and to draw their warrant in favor of said Boggs for the sum thus ascertained to be due, and declaring that it shall be the duty of the county treasurer to pay said warrant out of any money appropriated for county expenditures, is unconstitutional and void.

*Appeal from Caldwell Circuit Court.*

At the May term of 1857, of the Caldwell county court Wilbur F. Boggs presented for allowance against the county an account for three hundred and ninety-six dollars and ten cents for making an index to the record of deeds. The account was " disallowed." At the March term, 1858, he asked and obtained leave to introduce testimony touching the same account. The court having heard the testimony adhered to its former decision. An appeal was prayed and granted to the circuit court. At the trial the plaintiff proved by a witness that the court directed the index to be made. The defendant objected to the admission of this testimony on the ground that the records of the court should be introduced to prove such an order. An act of the general assembly approved January 21, 1857, was introduced against the objection of the defendant. Said act is as follows: " Sec. 1. The county court of Caldwell county shall audit and allow Wilbur F. Boggs, for services rendered in making a direct and inverted index of deeds and mortgages recorded and of record in said county, at the rate of ten cents for each name. Sec. 2. The county court of said county shall draw their warrant in favor of said Wilbur F. Boggs for the sum thus ascertained to be ·due him ; and it shall be the duty of the county treasurer of said county to pay said warrant out of any money appropriated for county expenditures." The cause was submitted to the court without a jury. The court found for the plaintiff and allowed him one hundred and fifty dollars.

*E. B. Ewing*, (attorney general,) for appellant.

I. The plaintiff had no legal demand against the county. The court made no order directing the index to be made. If it had done so, it would have been a nullity for want of authority of law. (26 Mo. 276.) It is the duty of the clerk to make and keep an index of deeds, &c. The claim is *res adjudicata.* The decision of the county court in May, 1857,

is conclusive. No appeal was allowable from it; if allowable, it was not taken in time. If the county was liable, it was only so liable by virtue of the act of the legislature read in evidence. That act is unconstitutional. It was an unconstitutional interference with the administration of justice. (State v. Fleming, 7 Humph. 183 ; The State v. Sloss, 25 Mo. 293 ; 2 Pet. 657 ; 9 Cranch, 43.) It also took private property for public use without making any provision for compensation. The counties are corporations having rights of property. The act is also retrospective. (2 McLean, 212 ; 10 N. H. 387.)

*Gardenhire*, for respondent.

I. The county court had the right to employ plaintiff to make out the index. The rejection of the plaintiff's account at May term, 1857, is no bar to his recovery. It was not interposed as such at the March term, 1858. (See County of Boone v. Corlew, 3 Mo. 10.) No specific objection was made to the admission of the act of the legislature. (23 Mo. 438.) The act had no effect whatever in the decision of the case. No instruction was asked.

NAPTON, Judge, delivered the opinion of the court.

There can be no reasonable doubt, we think, that the county courts have the power to order an index to be made to the books of recorded deeds, and to allow a reasonable compensation for the work out of the county funds. Although it is the duty of the recorders to keep up their indexes without any compensation from the county, and their compensation is provided by law to come from the persons having their deeds recorded, yet in the course of time it may happen that these books become unfit for use and have to be renewed. The county court is specially entrusted with the duty of seeing to the preservation of any property belonging to the county, and they necessarily have the right of appropriating a sufficient sum from the county treasury to secure the proper execution of these duties. Undoubtedly

the more formal and usual mode of doing this is by an order of the court, entered on its records; but in a matter relating to the books and papers in the office of their clerk, such formality is not, we apprehend, necessary. A verbal direction from the judges on the bench, or from the presiding judge of the court alone, would certainly warrant a prompt compliance on the part of the clerk, and lay the foundation of a just claim against the county for a reasonable compensation. But in this case, the absence of a formal entry on the record was not insisted on by the county court, nor did it constitute, so far as this record shows, any part of their reason for rejecting this claim. The order was proved orally by the judges on the trial in the circuit court, and although there can be no doubt that the records of a court can alone be appealed to for the purpose of showing any proceeding necessary to appear on the record, we do not regard an order of this nature, relating to the books in the office, as one which necessarily had to appear by record. If the judges of the court had ordered ice to be procured during the session of the court, or benches to be constructed for the convenience of visitors or bystanders, a compliance with such orders would constitute a claim against the county, whether the court thought proper to enter it on the record or not. There was, however, no dispute in this case but that the work was done and done in pursuance of an order of the court.

We do not see any objection to an appeal from the rejection of this account at the March term in 1858, although it had been previously rejected at a prior term. The county court permitted the plaintiff to introduce new proof, and gave him to understand that, by such permission, they were still open to conviction. He could have appealed from the original order of rejection, but when he presented his claim a second time by leave of the court, no objection was interposed of *res adjudicata*. The objection, if it would have been available, may be considered as waived. The rejection of the claim was not like a judgment in a suit between individuals, which the court could not on its own motion open

at a subsequent term, but the county court were the commissioners or agents of the county, and could, on behalf of the county, waive any advantage the county might have.

Upon the trial of this case in the circuit court, an act of the legislature was offered, which ordered the county court to pay the plaintiff his claim out of the county treasury. The reading of the act was objected to, for what reason is not stated. The law was read and this is the principal error assigned for a reversal of the judgment. It is insisted that the law was unconstitutional, and of this we entertain no doubt; but the point is not saved. We do not understand that a question of the constitutionality of a law can be brought to this court in this way. We can not see that the court thought the law a valid one; on the contrary, it is quite manifest that the court, although the law was allowed to be read, utterly disregarded it. The court may have supposed it hardly respectful to the legislature to refuse to hear one of their laws read, whether constitutional or unconstitutional. No opinion of the court was asked concerning its validity; no instruction was offered. It does not appear but that the objection to its reading related entirely to its authenticity, and the court may have been satisfied on this point. A mere general objection is interposed to its reading in the court-house. But even if such general objections might be regarded by this court as sufficient, in some cases, to bring up the question of the validity of a law, the record in this case shows that, whatever opinion the court may have entertained about the law, it had no influence on the decision of the case. The judgment was not in accordance with the law—the law requiring the court to allow the plaintiff three hundred and ninety-eight dollars, and the court only allowed one hundred and fifty. It would be folly for this court to reverse a judgment for a mere abstract error, if error was really committed in the matter.

Judge Scott concurring, judgment affirmed.