[No. 4094. Decided March 13, 1902.]

EVERETT SMITH, *Respondent,* v. GEORGE B. LAMPING *et*
*al., Appellants.*

APPEAL — REVIEW OF PLEADINGS SUBSEQUENTLY FILED.

Where an appeal was taken from an order overruling a de-
murrer to a complaint, and subsequent to the overruling of the
demurrer an amended complaint was filed by plaintiff, the su-
preme court will not review the allegations of such amended
complaint, although brought up by supplemental record.

COUNTIES — INDEX OF RECORDS — POWER OF COMMISSIONERS TO AU-
    THORIZE NEW SYSTEM.

The legislature having made provision by Bal. Code, § 412,
prescribing the kind of index of conveyances and mortgages to
be kept by the county auditor, and expressly making it his duty
to follow the method therein prescribed, negatives the idea that
the county commissioners have authority to direct the prepara-
tion of a different method by other parties at public expense.

SAME — ULTRA VIRES.

Bal. Code, §§ 265, 342, which authorize counties to do all
necessary acts in relation to all the property of the county and
empower the county commissioners to have the care of the
county property and the management of the county funds and
business do not contemplate that they shall go beyond their

statutory authority and interfere with the conduct of county business which has been expressly defined by the legislature.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Affirmed.

*James McNeny, W. S. Fulton, Vince H. Faben* and *McClure & McClure,* for appellants.

*Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This suit was instituted by respondent against appellant George B. Lamping. The complaint alleges that respondent is the owner of real and personal property situate in King county, Washington, which is subject to taxation therein, and that he was at all times mentioned in the complaint, and is now, a taxpayer of said county, resident therein; that said appellant was at all times mentioned in the complaint the duly elected, qualified, and acting county auditor of said county; that at all times since the first day of January, 1901, and for years prior thereto, the county auditor of King county kept in his office, as such county auditor, a general index, direct and inverted, a detailed description of which is set out and which is in conformity with the requirements of § 412, Bal. Code. It is also alleged as follows:

"That, notwithstanding the facts aforesaid, the board of county commissioners of said King county, on the 18th day of April, 1901, entered into a contract in writing with one E. W. Wood, in words and figures following, to wit:

" 'This agreement made and entered into this 18th day of April, A. D. 1901, by and between E. W. Wood, party of the first part, and the county of King, in the state of Washington, by and through the board of county commissioners of King county, Washington, the party of the second part,

40—27 WASH.

" 'Witnesseth, that the said party of the first part, in consideration of the sum of twenty-two thousand five hundred ($22,500) dollars, to be paid as hereinafter set forth by the said party of the second part, hereby agrees to compile, tabulate, and complete to the date of Dec. 31, 1901, in a thorough and workmanlike manner, for the said county of King, a set of numerical or tract indexes, as per exhibit marked "A" and "B" hereto attached, and shall be estimated to run about ten years from and after the date the same are turned over to and are accepted by the county of King, showing all instruments filed or of record in the county auditor's office of said King county affecting the title of all real estate in said King county, state of Washington, and to complete said work to the date he shall turn the same over to said county in a good and workmanlike manner within one year from the date hereof. And in consideration of the premises aforesaid the said party of the second part agrees to pay to the said party of the first part the sum of $22,500, and to pay therefor on or before the seventeenth day of each and every month during the continuation of this contract the sum of ninety per cent. of the estimated work performed in connection with said indexes during the preceding month, said estimate subject to the approval of the county auditor, deferred payments to be paid upon completion and acceptance of the work by the board of county commissioners of said King county. All payments are to be made in warrants drawn on the current expense fund or in cash, as the board may elect. And the said county of King hereby agrees to furnish to the said party of the first part all books, blanks, and other stationery or material necessary to compile, tabulate, and complete the said work, the same to be furnished upon order of the said party of the first part from time to time, so that the work may not be delayed, and to be of the form and style designated by the party of the first part, or as hereafter may be agreed upon by the parties hereto. And the county of King further agrees to furnish the necessary competent persons to carefully compare and check said work as the same progresses, said checkers to be appointed by and under the supervision of the said county auditor.

Also, such draughtsmen as are needed by the party of the first part. The said party of the first part and his employees are to have full access to the books and records of the county of King during working hours. The party of the second part to furnish every reasonable facility to enable the party of the first part to expeditiously carry on the work.' "

It is further alleged that said contract was entered into by the said board of county commissioners over the objection and protest of the appellant Lamping, and that said appellant refused to sign or attest the same as county auditor or as *ex-officio* clerk of said board; that upon the execution of said contract the said E. W. Wood entered upon the performance thereof, and has since that date been engaged in performing the same; that the said appellant Lamping has made an estimate of the amount earned under said contract by the said Wood for the month of April, 1901, estimating the same at the sum of $80, and has prepared a warrant in favor of said Wood for the amount of said estimate, less ten per cent. thereof, to-wit, for the sum of $72, and the issuance of said warrant was on the 2d day of May, 1901, approved by said board, and the board on said day authorized the payment of the said claim in said sum of $72 on account of the contract aforesaid, and that said appellant threatens and intends to issue and deliver said warrant to said Wood, and will do so unless restrained by order of the court. The complaint also avers as follows:

"That the set of indexes contemplated by said contract are what are known as tract indexes, in which the various instruments of record are indexed under the heading or description of the real property affected thereby, and if completed will constitute an index to the records by tracts instead of by the names of the parties thereto, in manner substantially as follows, to wit: A division or page of the

index is set apart to a lot or subdivision of land, and in said division, or on said page, is entered in consecutive order or record thereof the volume, the page, and the names of the parties to each recorded instrument affecting said lot or subdivision.  That such a system of tract indexes is not required by the laws of the state of Washington to be kept by the county auditor at the expense of the county, or at all, and the making of the same would impose a burden of expense upon the county of King and the taxpayers, not only in the amount of the original cost thereof contemplated in the contract, to wit, $22,500, but also the expense of keeping the same up to date in the future, and would thereby increase the amount of taxes and rates of taxation assessed and levied upon and on account of all the taxable property in said county, to the great and irreparable damage of the taxpayers of said county, including the plaintiff."

The complaint prays that a temporary restraining order may issue pending the hearing of the cause, and that the same may be made permanent upon final hearing.

After the commencement of the suit the said appellant Lamping moved the court that said E. W. Wood, one of the appellants, be made a party defendant in the action, for the reason that he is a necessary party to the complete determination of the questions involved in the suit.  The court, deeming him to be such necessary party, granted said motion and ordered that said appellant Wood be made a party defendant.  Thereupon the appellants demurred to the complaint separately, each alleging that the complaint does not state facts sufficient to constitute a cause of action.  Other grounds of demurrer alleged in the demurrer of appellant Lamping are not urged.  The demurrers were overruled.  Thereafter the court heard the application for a temporary injunction upon affidavits submitted by both appellants and respondent, and thereupon granted the same.  A temporary injunction was issued re-

straining the delivery of the aforesaid warrant, or the issuance of any warrant, on account of the aforesaid contract pending the final determination of the cause. From the order issuing said temporary injunction this appeal was taken.

It is assigned as error that the court overruled the demurrers to the complaint. It appears by a supplemental record brought here by respondent that subsequently to the time the demurrers were overruled and the temporary injunction issued, respondent filed an amended complaint in which it is alleged, in addition to what was alleged in the original complaint, that the cost to King county of the installation of the system of tract indexes contemplated by the said contract will, when added to the ordinary running expenses of the auditor's office of said county, far exceed the amount of legal fees collectible by said office during the year 1901. It is urged that said allegations show the contract to be in violation of the terms of chapter 131, Laws 1893, p. 427. This court cannot, however, consider the amended complaint upon the demurrers now before the court, since the demurrers were directed to the original complaint and the order appealed from issued thereunder. Appellants assert, in their brief, that issue has been joined on the amended complaint and that the same has not been disposed of by the court below. The supplemental record does not disclose any issue joined or any proceedings had upon the amended complaint, but there is no appeal here from any proceedings had thereon, and we must therefore consider the demurrers in connection with the original complaint alone.

Respondent contends that the contract shown in the complaint is *ultra vires* of the board of county commissioners. Appellants base their argument that the board has power

to make such contract upon the following provision contained in § 265, Bal. Code:

"The several counties in this state shall have capacity as bodies corporate . . . to purchase and hold such personal property, as may be necessary to its corporate or administrative powers, and to do all other necessary acts in relation to all the property of the county."

Also upon subdivision 6 of § 342, Bal. Code, wherein it is provided that the county commissioners are authorized and required "to have the care of the county property and the management of the county funds and business." It is insisted that the powers thus conferred upon the county commissioners are comprehensive, and constitute them the financial and business agents of the county, and, in an enlarged sense, the guardians of the county. Upon the other hand, respondent cites § 412, Bal. Code, as providing specifically just what kind of index shall be kept by each auditor in the state, and urges that, since a system of indices is required by law to be kept, it is not within the power of the county commissioners to incur the expense of another and different system. Appellants cite the case of *People ex rel. Ford v. Earle*, 47 How. Pr. 368. In that case the question arose as to whether the board of supervisors had authority to purchase a right to use in the register's office a patented system of indexing public records. It was held that they had such power. Respondent, however, pertinently suggests that it does not appear in the opinion whether the index which was used was such an one as the statute prescribed, or whether the statute prescribed any special kind of index for the county at that time. If such was true, we think the case must be regarded as overruled by the court of appeals in the later case of *People ex rel. Welch v. Nash*, 62 N. Y. 484. In that case the board of supervisors passed a resolution authorizing the relator,

who was then county clerk, to re-index all the recorded
mortgages and miscellaneous records in his office upon a
new plan at a specified compensation.   The relator's term
of office expired, and the defendant succeeded him in the
office.   The relator, before the expiration of his term, had
procured the necessary books, and, after the defendant
entered upon the duties of the office, demanded of him the
use of the office and of the records for the purpose of prose-
cuting the work.   This the defendant refused.   The re-
lator thereupon made application for a writ of mandamus
to compel the defendant to allow him the use of the records
for such purpose.   The writ was denied by the supreme
court, and upon appeal the court of appeals, at page 486
of the opinion, said:

"The order in this case should be affirmed, for the rea-
son, not only that the mandamus applied for would be an
unlawful interference with the custody of the books and
records vested by law in the county clerk (1 R. S., 375,
§ 52), but that the subject of indexing such books is regu-
lated by the statute (Laws of 1843, chap. 199), which pre-
scribes the manner in which the indices shall be made, de-
volves the duty of making them upon the county clerk,
and provides for his compensation for so doing.   The
board of supervisors had no power to change the method of
indexing prescribed by statute, nor to transfer the duty or
power of making the indices from the county clerk to any
other person.   When the relator ceased to be county clerk
the duty of making indices, when necessary, devolved upon
his successor in office, and became one of his official
duties."

The above case seems to be directly in support of re-
spondent's contention here.   Appellants also cite *Hoffman
v. Board of Commissioners*, 96 Ind. 84.   In that case a
contract had been made through the board of commission-
ers for the preparation of a general index of judgment
dockets of the circuit court and common pleas courts.   It

was held that the commissioners had the power to make such a contract. It does not appear whether any index to the said judgment records had been theretofore made or not, and it is not stated that there was any statutory requirement that the keeper of the judgment records should make and keep such an index. It may be fairly inferred that such was not the case from the following extract from the opinion, found at page 86:

"If the law provides that a definite thing shall be contracted for, and prescribes the mode of contracting, then no discretion is vested in the county or municipal officers, and they must conform to the requirements of the law. But there are no such statutory provisions applicable to this case."

Appellants cite *Boggs v. Caldwell County,* 28 Mo. 586. There it seems the Caldwell county court had directed an index of deeds to be prepared, and it was held that the county was bound. The opinion, at page 588, contains the following:

"Although it is the duty of the recorders to keep up their indexes without any compensation from the county, and their compensation is provided by law to come from the persons having their deeds recorded, yet in the course of time it may happen that these books become unfit for use and have to be renewed. The county court is specially entrusted with the duty of seeing to the preservation of any property belonging to the county, and they necessarily have the right of appropriating a sufficient sum from the county treasury to secure the proper execution of these duties."

It would appear from the above quotation that the index may have been prepared, not as a new and different system from that which the law required to be kept by the recorder, but for the purpose of taking the place of one which was worn and unfit for use, but which had been

originally properly prepared by the recorder. While the duty devolved upon the recorder to prepare and keep an index as the records accumulated, yet it must have been deemed that it was not his duty to replace a worn index of old and accumulated records by making a new one. It therefore devolved upon the county court, which was specially intrusted with the duty of preserving the county's property, to see that such an index was preserved. Such was not the purpose of this case. No claim is made that the contract in this case became necessary in order to preserve for the county such an index as is required by law to be kept, and from the averments of the complaint we are precluded from indulging any presumption to that effect, as was done in *Commissioners of Leavenworth County v. Keller,* 6 Kan. 510, cited by appellants. That decision seems to have been based upon the same idea of necessity in order to preserve the kind of index required by law to be kept. At page 520 the court observed:

"If a case can be reasonably supposed in which it would be necessary for the interests of the county to have the indices of the records of the county copied and corrected, then the power to do so exists in such a case. And we can readily imagine causes that would make such a case necessary. As, if they were so near worn out as to threaten speedy destruction; or that the ink was fading, so that they were becoming illegible, and many other causes. As the record is silent as to the causes. that in the opinion of the county board made the work necessary in this case, we are bound to infer that the necessity existed. The indexing of the tax deeds may stand upon a different footing. It seems that for the seven years this had been neglected. This neglect of the register would render the records almost useless for the purpose of examination. Public convenience and public interest required that the work should be done. As those registers of deeds who had neglected the duty had gone out of of-

fice, there was no way to enforce the duty, and no way of remedying the evil, but by having an index made out."

The case of *Burnett v. Markley,* 23 Ore. 436 (31 Pac. 1050), is cited by appellants. There a complete "present-ownership" list of all the property holders in the county was prepared in order to assist the assessor. It was held that the party who had prepared the list by authority of the county court could recover. It seems from the opinion that it may have been necessary, under the law, for the assessor to prepare such a present ownership list, and the court observed that it was practically impossible for the assessor to list and assess all the property in his county without some such aid, and that it became necessary thus to assist the assessor and enable him to list and assess a large amount of real estate which had theretofore escaped taxation, amounting in value, as the record disclosed, to over $650,000. The decision was based upon the existence of an absolute necessity in order that all property might be listed and assessed as required by law. In other words, the requirements of the law could not have been effected without the work which was done in aid of the assessor. Much to the same effect is *Martin v. Whitman County,* 1 Wash. 533 (20 Pac. 599), also cited by appellants. There a contract was made with one by which he was to prepare a complete tax list of all delinquent taxes in the county, and was to receive therefor five per cent. of such taxes as they were collected. The contract was held enforcible on the principle that the county commissioners are the business managers of the county's funds, and that the fruits of the contract were in aid of the collection of taxes due the county,—that is to say, in aid of the accomplishment of that required by law to be done. It is suggested by respondent that the force of the above decis-

ion may be said to be somewhat weakened by the argument in *Abstract Co. v. Anderson,* 9 Wash. 349 (37 Pac. 471). However, the power of county commissioners to authorize the use of the abstract books was not decided in that case, since the assessor undertook to bind the county without the authority of the commissioners.

Under the allegations of the complaint in the case at bar, all the requirements of law have been strictly carried out by the county auditor. There remains nothing more to be done. The contract in question merely calls for the preparation of an index not required by law to be kept, and which in no way assists the auditor in the preparation of that which he must keep under the law. As before stated, the case of *People ex rel, Welch v. Nash, supra,* seems to be directly in support of respondent's position here, and it is the only case we have found, as cited by either party, that bears clearly upon the real points presented by this case. It will be observed by reference to the quotation from that case that the statute of New York prescribed the manner in which the indices should be kept, —as is done by § 412, Bal. Code, *supra,*—and the duty of making them devolves upon the county clerk, and the court says that the board of supervisors had neither power to change the method of indexing prescribed by statute, nor to transfer the duty or power of making the indices from the county clerk to any other persons. It is argued that it is not proposed in this case to discontinue the index required by law to be kept, but only to supplement it with the new method. But in any event its preparation calls for a large expenditure of money, to prepare a system of indices which the law has not authorized. It is not reasonable to suppose that when the legislature so carefully described the system that should be followed by county auditors, and which should be uniform throughout the state,

it at the same time intended to authorize county commissioners to expend large sums to maintain other and different systems. The fact that a certain mode or method has been expressly designated by the legislature we think excludes the idea that a different mode or method may be pursued. The legislature has not only prescribed the method, but has expressly made it the duty of the county auditor to follow it, and this we think negatives the idea that another method may be pursued at public expense by authority of the county commissioners. The new method may be more convenient and more in accordance with the enlightenment and enterprise of the times, but, until the legislature has authorized its adoption and conferred upon county commissioners the power to expend public money for that purpose, we think it must be held that it is beyond their power to so expend the county's funds. The powers of the county commissioners are derived from the state, and they are limited and defined by law. It was said in *Sturgeon v. Hampton,* 88 Mo. 203, 213:

"The county courts are not the general agents of the counties or of the state. Their powers are limited and defined by law. These statutes constitute their warrant of attorney. Whenever they step outside of and beyond this statutory authority their acts are void."

Again, in *Alderson v. St. Charles County,* 6 Mo. App. 420, 426, it is said:

"The county court is not the general agent of a corporation called a county, which it has a right to bind to any contract concerning the corporation. Its power is derived from the state and it can only bind that territorial subdivision of the state called a county by virtue of authority of law derived from the state government."

"It is a necessary conclusion from the principles already stated that the public, whether it be the national, state

or lesser municipal government, can be bound by the acts and contracts of its officers and agents only when such officer or agent has acted strictly within the scope of his authority as created, conferred and defined by law, and that it is not bound where such officer or agent has transcended or exceeded his lawful and legitimate powers." Mechem, Public Officers, § 834.

Since we entertain the views above expressed, it is unnecessary to discuss other questions argued by counsel. The judgment is affirmed.

REAVIS, C. J., and DUNBAR, ANDERS, WHITE and MOUNT, JJ., concur.

FULLERTON, J., concurs in the result.