STATE ex rel. FREEMAN, Respondent, v. ABSTRACT-
ERS BOARD OF EXAMINERS et al., Appellants.

(No. 7,380.)

(Submitted April 30, 1935.   Decided May 9, 1935.)

[45 Pac. (2d) 668.]

*Mr. Raymond T. Nagle,* Attorney General, *Mr. Enor K. Matson,* Assistant Attorney General, and *Mr. Rudolph Nelstead,* of Counsel, for Appellants, submitted an original and a supple-

mental brief; *Mr. Matson* and *Mr. Nelstead* argued the cause orally.

*Messrs. Toomey & McFarland* and *Mr. John A. Chapman,* for Respondent, submitted a brief; *Mr. E. G. Toomey* argued the cause orally.

572

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Application by the state, on the relation of George O. Freeman, for a writ of mandate against the Abstracters Board of Examiners to compel the board to issue to the relator a certificate of authority to conduct an abstract business in Lewis and Clark county. From a judgment awarding the writ, defendants appeal.

For a period of sixteen years prior to July 1, 1932, the relator was continuously engaged in the business of abstracting titles to real estate in Lewis and Clark county, and during all of that period in which such a certificate was required by law he has held, and still holds, a certificate as a registered abstracter. However, relator was not in business for himself but managed the business of the Montana Audit Company, which company owned the plant, abstract books, and indices which relator used jointly with other officers of the company. Owing to the shrinkage of business in this line, due to the depression, relator's connection with the company was severed in 1932, and thereupon he made application to the defendant board for a "certificate of authority" to open and conduct an abstracting business of his own.

There can be no question but that the relator is personally well qualified to conduct such a business, but his only showing

to the board as to his equipment for conducting such a business is that he "does have 'for use in such business' the original records in the office of the Clerk and Recorder of Lewis and Clark County." The board denied the application and refused the certificate on the ground that the applicant had not complied with the requirements of Chapter 105, Laws of 1931. Relator thereupon instituted this proceeding in the district court of Lewis and Clark county and therein contended that Chapter 105, above, is unconstitutional. Issue being joined and a hearing had, the court entered its judgment declaring that the Act is unconstitutional and that the relator requires no certificate of authority from the board to engage in the abstract business. The board thereupon appealed.

Prior to April 1, 1931, the only regulation of the business of abstracting titles to real estate was provided by Chapter 43, Laws of 1915. This Act merely required the filing of a bond with the state treasurer and the issuance by the treasurer of a certificate entitling the principal to engage in business (secs. 4139, 4140, Rev. Codes 1921), and the procuring of a seal, an impression of which was to be filed with the state treasurer before the issuance of the certificate. The certificate was valid so long as the bond remained in force, but the bond was to be for one year, and was thereafter renewable annually by a certificate of continuation. (Sec. 4143, Rev. Codes 1921, as amended by Chap. 60, Laws 1925.)

Chapter 105 of Laws of 1931, created the board of examiners, and provided for the examination of applicants, the registering of abstracters, and the issuance of a "Certificate of Authority" to those who comply with the requirements of the Act, to embark upon the business of abstracting.

Section 1 of the Act provides that: "Any person * * * desiring to engage in or continue the business of making and compiling abstracts, * * * shall have for use in such business a set of abstract books or other system of indices or records showing in a sufficiently comprehensive form all instruments affecting title to real property on file or of record in the office of the County Clerk and Recorder, * * * and

shall have in charge of such business a registered abstracter, * * * and shall first obtain a Certificate of Authority," etc.

Section 11 of the Act also provides that: "Every person, firm or corporation, who shall furnish satisfactory proof to said board that applicant has for use in such business a set of abstract books or other system of indices and shall have in charge of such business a registered abstracter, * * * furnish the bond * * * and pay the application fee * * * shall be entitled, upon compliance with the other provisions of this law, to receive from said Board a Certificate of Authority. Certificates of Authority shall be valid for one year. * * * "

The Act contains three exceptions to the above requirements. Section 12 of the Act declares (1) that: "Any person, firm or corporation not having the abstract books or indices as required, * * * who, upon the 1st day of March, 1931, is the holder of a valid and subsisting Certificate of Authority issued * * * pursuant to Section 4140 of the Revised Codes of * * * 1921, and who shall make application to said Board prior to the expiration of such Certificate, * * * and who shall comply with the other requirements hereof * * * shall, upon the payment of Five Dollars [the regular fee], as is herein provided be issued a Certificate of Authority under the provisions of this Act." (2) "Any person, firm or corporation, desiring to engage in the business * * * who is not at the time of making application * * * provided with the abstract books or indices, * * * and who can comply with the other requirements, * * * shall, upon submitting satisfactory proof to said Board that he has been engaged in good faith in the preparation of such abstract books or indices and that upon the date of such application that such abstract books or indices are at least fifty per cent completed and that he intends to complete the same, * * * be issued a Temporary Certificate of Authority good for a period of one year, and, upon good cause being shown, * * * such Certificate may be renewed * * * for an additional

term of one year only." (3) "The provisions of this Act shall not apply to County Clerks and Recorders or persons employed by counties in the preparation of abstracts of title." (Section 18 of the Act.)

In support of the judgment, it is first contended that relator's showing that he has access to the records of the county is a sufficient compliance with the requirements of the Act; that there could be no more "comprehensive" index than that of the county, which is "all-inclusive." This contention cannot be maintained; it would render the requirements of sections 1 and 11, above, meaningless, and set at naught the manifest intention of the Legislature to require an abstracter to have a plant or set of "abstract books" from which he can compile abstracts accurately. The undisputed evidence received on the trial is to the effect that an abstracter cannot safely rely upon the records and indices in the clerk's office for use in his business, for the reason that, under the statutes, the county clerk merely indexes instruments under the names of the parties. (Sec. 4799, Rev. Codes 1921.) A break in the chain of title, by name indices, would mislead the investigator into believing that he had reached the end of the chain. Numerous instances in illustration could be given; a few will suffice:

An abstracter is requested to make an abstract of title to a tract of land of which A is the owner of record. A had theretofore transferred to B, who had not recorded his deed but had mortgaged the land to C. Jane Doe is the record owner of a tract of land; she married Richard Roe; and thereafter joins with him in a deed to the property without reference to her maiden name. A is a corporation owning real estate; it changes its name to B, and thereafter transfers the property under the new name. Many such examples of instruments of record affecting title, but which the indices in the clerk's office would not disclose to the abstracter, might be given; change of title by the law of descent, with mortgage of an heir's interest before an estate is closed; the recording of a quitclaim

deed by the holder of an unrecorded contract for a deed. Such pitfalls are avoided by the experienced abstracter through the compilation and use of an "abstract book or tract index," which describes every piece of real estate in the county and to which is "charged" every instrument of record in the county in any manner affecting the title to the "tract regardless of who gave the instrument or who is named in the instrument." The indices differ somewhat with different individuals, but the system is universal among abstracters, and it is such records, varying according to the individual ideas on the subject, that are known to the men in the business as "abstract books or other system of indices or records showing in a sufficiently comprehensive form all instruments" affecting the title to each tract of land in a county. This is manifestly the meaning of the terms used by the legislature.

"The meaning of a given term employed in a statute must be measured and controlled by the connection in which it is employed, the evident purpose of the statute, and the subject to which it relates" (*Northern Pacific Ry. Co.* v. *Sanders County*, 66 Mont. 608, 612, 214 Pac. 596), and, if the term has a well-defined meaning in the law, its use, without specific definition, will not render the Act inoperative for uncertainty (*State ex rel. Lyman* v. *Stewart*, 58 Mont. 1, 190 Pac. 129).

The verb "abstract" means to withdraw or take from; consequently the noun, as used here, means "that which concentrates within itself the essential qualities of a larger thing or several things." (See Merriam-Webster's New Dictionary [2d ed.].) Therefore "an abstract of title is an epitome of the conveyances, transfers and other facts relied upon as evidence of title, together with all such facts appearing of record as may impair the title." (1 Cal. Jur. 117; *DeHuy* v. *Osborne*, 96 Fla. 435, 118 So. 161.) Mere indices of the records found in the county clerk's office do not constitute "abstract books" (*Hess* v. *D. T. Draffen & Co.*, 99 Mo. App. 580, 74 S. W. 440), and the mere right to consult the clerk's indices and the gen-

eral records of the county cannot be tortured into compliance with the requirements of Chapter 105, above. We do not therefore find in the reference by the board to ''tract indices'' any attempt to exercise delegated legislative powers, but rather the exercise of discretion in determining what systems, other than ''abstract books,'' are ''sufficiently comprehensive'' for proper use in the business.

This court has heretofore had occasion to comment upon and compare the two methods of running down the title to a tract of land, i. e., from the indices in the clerk's office and from a ''tract index,'' and has said: ''It appears that the latter is the only safe, reliable, and feasible method.'' (*Arnold* v. *Custer County,* 83 Mont. 130, 269 Pac. 396, 399.) It is undisputed in the record that ''the minimum requirement'' of the terms used in the Act is ''a tract index showing all instruments affecting all pieces of property in the county.'' Such requirement increases the protection of the public in relying upon the accuracy of abstracts. ''Index learning turns no student pale, yet holds the eel of science by the tail,'' declared Alexander Pope.

It is contended, however, that the business of abstracting titles is not affected with a public interest, and therefore the legislature is without power to regulate that business, under the ''due process of law'' clause of our Constitution (Art. III, sec. 27) and the Constitution of the United States (Amendment 14, sec. 1). It is true that power to fix rates and prices does not exist unless the business is ''affected with a public interest''; but ''the authority to regulate the conduct of a business * * * comes from a branch of the police power which may be quite distinct from the power to fix prices.'' (*Tyson & Bro. United Theatre Ticket Offices* v. *Banton,* 273 U. S. 418, 47 Sup. Ct. 426, 428, 71 L. Ed. 718, 58 A. L. R. 1236; *Southwest Utility Ice Co.* v. *Liebmann,* (C. C. A. Okl.) 52 Fed. (2d) 349.) This ''branch of the police power,'' which is inherent in the state, permits the reasonable regulation of a business or profession when such regulation appears

necessary for the general welfare of the people. Thus, under similar attacks on constitutional grounds, this court has upheld the requirement of examination and registration of professional nurses (*State ex rel. Marshall* v. *District Court*, 50 Mont. 289, 146 Pac. 743, 746, Ann. Cas. 1917C, 164), wherein it is held that " 'due process of law' is not necessarily judicial process," and in those cases where the practice of a profession is potent for harm as well as for good the state may require such qualifications as tend in its judgment to insure against the effects of ignorance, incapacity, deception, or fraud, and may enforce such requirements by any proceedings adapted to the nature of the case. (See *Craig* v. *Board of Medical Examiners*, 12 Mont. 203, 29 Pac. 532.)

While the relator is undoubtedly qualified as an abstracter and has received all that the Act warrants because of that fact—his registration—the law goes one step further and, in effect, says: No matter how well qualified you are to make abstracts, unless you are equipped to do that work which experience has demonstrated cannot be done from the records and indices in the county clerk's office alone, you cannot conduct an abstract business unless you first show to the board that you have the necessary equipment. Owing to the particular nature of the business, the result of an attempt to make an abstract might be more satisfactory in a case where an unqualified man worked with a complete tract index or set of abstract books than when a qualified man worked without the aid of such books. This additional requirement with reference to the instant business would therefore seem reasonable.

"The guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the

relevant facts." (*Nebbia* v. *New York*, 291 U. S. 502, 54 Sup. Ct. 505, 510, 78 L. Ed. 940, 89 A. L. R. 1469.) In discussing the power of a state to regulate a business of a private nature in the interest of the public welfare, the supreme court listed with apparent approval the various regulations affecting the milk industry in New York, and declared that the producer of milk is "subject to rules governing the care and feeding of his cows and the care of the milk produced, the condition and surroundings of his barns and buildings used for production of milk, the utensils used, and the persons employed in milking." These requirements, proper for the protection of the public health, are akin to the requirements here for the protection of the general welfare of the people, which the law under consideration has for its purpose by protecting titles in every county in the state. What makes for the general welfare is necessarily, in the first instance, a matter of legislative judgment and a judicial review of such judgment is limited. (*Noble State Bank* v. *Haskell*, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, Ann. Cas. 1912A, 487, 32 L. R. A. (n. s.) 1062.) "A classification may be valid which is based upon equipment, or on personal fitness, or on both." (12 C. J. 1159, 1160, and note 32.)

It is next contended that the three exceptions from compliance with the Act, or the immediate compliance therewith, contained in sections 12 and 18 quoted above, render the Act discriminatory and deny to the relator the equal protection of the law. Section 12 deals with temporary expediency to the end that no hardship be worked upon those in business by a change in the law and at its inception, and to give all persons an opportunity to qualify within a reasonable time. As to those in business and then holding a certificate issued under the old law, they are entitled to a certificate for one year from the expiration of the current certificate, at the end of which they must comply with the requirements of the Act or go out of business, or those who are making an honest effort to perfect a plant are permitted a temporary certificate on

showing that they have their books half completed; this certificate may be renewed once, and once. only. This, it would seem, constitutes a reasonable classification, if it may be called classification. The constitutional provisions against discrimination do "not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." All things must have a period of adjustment, and such classification is not "arbitrary classification." (*Sperry & Hutchinson Co.* v. *Rhodes*, 220 U. S. 502, 31 Sup. Ct. 490, 491, 55 L. Ed. 561; *Williams* v. *Walsh*, 222 U. S. 415, 421, 32 Sup. Ct. 137, 56 L. Ed. 253.)

The purpose of the Act is to require all abstracters to come within the provisions thereof within a reasonable time; if the board has, as indicated, issued certain certificates to which the applicants were not entitled, because of the lapse of time without compliance with the requirements, that fact forms no basis for declaring the law itself discriminatory.

As to the exception of county clerks and "persons employed by counties in the preparation of abstracts," contained in section 18, such persons are not engaged in the business of abstracting titles, and do not come into competition with abstracters. What purpose was intended to be accomplished by including with the county clerks other "persons employed by counties in the preparation of abstracts" is left to conjecture. It is certain that the county commissioners have no authority to engage "other persons" at county expense to engage in the business of making abstracts for individuals; they may employ others than the county clerk to prepare abstracts for the county in connection with the taking of tax deeds or the sale of property acquired by the county (*Arnold* v. *Custer County*, above), and this provision may authorize the county to employ others than abstracters with authority to make such abstracts, but in doing so they are not engaged in or conducting an abstract business; their activity would be, at most, sporadic. If others than abstracters are thus employed hereafter, they will not be engaged in the business of abstracting. (*Morningstar*

v. *State,* 135 Ala. 66, 33 So. 485; *State* v. *Roberson,* 136 N. C. 587, 48 S. E. 595; *Fleckenstein Bros. Co.* v. *Fleckenstein,* 66 N. J. Eq. 252, 57 Atl. 1025; *Continental Finance Corp.* v. *Warren,* 10 N. J. Misc. 607, 160 Atl. 87.) Parenthetically, it may be doubted that any board of county commissioners having occasion to ascertain the condition of the title to real property will employ others than accredited abstracters to perform the work for them.

Our only provision authorizing the county clerk to search his records and certify to the result thereof is that he "may, upon the application of any person * * * make searches for conveyances, mortgages, and all other instruments, papers, or notices recorded or filed in his office, and furnish a certificate thereof." (Sec. 4807, Rev. Codes 1921.) This section authorizes the clerk to make certified copies of particular instruments called to his attention, but, if it is broad enough to include authority to make abstracts, it was not intended to make the clerk a public abstracter; nor would an abstract made by him contain matters found in other county offices affecting the title to land. Further, the clerk could not be compelled to make abstracts by reason of such a provision. (*Dirks* v. *Collin,* 37 Wash. 620, 79 Pac. 1112.) The clerk, in his official capacity, could not comply with the provisions of this Act, as he is without authority to prepare or maintain at public expense any other "indices" than those which he is by law directed to keep. (*Smith* v. *Lamping,* 27 Wash. 624, 68 Pac. 195.) There is no unconstitutional discrimination found in this exemption.

On the record it is clear that the board did not abuse its discretion in denying the relator a certificate of authority. The denial was not based upon failure to comply with any rule or regulation set up by the board, but for the reason that the relator "does not own or control the requisite plant and tract indices prescribed by said sections 1 and 11, Chapter 105, Laws of 1931." The Act does not violate any one of the constitutional provisions on which relator relies.

The judgment is reversed and the cause remanded to the district court of Lewis and Clark county, with direction to dismiss the proceeding.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied June 5, 1935.