In the Matter of the Application For Certificate of Authority of T.I.M. COMPANY, INC., an Oklahoma corporation, Appellant,

v.

OKLAHOMA LAND TITLE ASSOCIATION, an Oklahoma Corporation; Standard Abstract & Title Co., an Oklahoma Corporation; Guaranty Abstract Company, an Oklahoma Corporation; Tulsa Abstract & Title Company, an Oklahoma Corporation; Smith Brothers Abstract & Title Co., Inc., an Oklahoma Corporation; Southern Abstract Co., Inc., an Oklahoma Corporation, and Bryan County Abstract Co., an Oklahoma Corporation, Appellees.

No. 59–744.

Supreme Court of Oklahoma.

Oct. 2, 1984.

As Corrected Oct. 10, 1984.

As Amended on Denial of Rehearing April 16, 1985.

C.S. Lewis, III, William C. Conner, Robinson, Boese & Davidson, Tulsa, for appellant T.I.M. Co., Inc.

Graydon Dean Luthey, Jr., Jones, Givens, Gotcher, Doyle & Bogan, Tulsa, for appellee Okla. Land Title Assoc.

John G. Moyer, Jr., Rosenstein, Fist & Ringold, Tulsa, for appellee Standard Abstract Co.

Richard E. Comfort, Tyrus V. Dahl, Jr., Hall, Estill, Hardwick, Gable, Collinsworth & Nelson, Tulsa, for appellee Tulsa Abstract & Title.

R. James Unruh, Unruh & Leiter, Tulsa, for appellee Smith Bros. Abstract Co.

Steve Conatser, Conatser & Conatser, Bartlesville, for appellees Southern Abstract Co. & Bryan County Abstract.

Joseph A. McCormick of Sublett, McCormick, Andrew & Keefer, Tulsa, for appellee, Guaranty Abstract Co.

DOOLIN, Justice.

This case concerns an application for a certificate of authority to do business as an abstracter in Tulsa County. The parties in this controversy have stipulated that the appellant, T.I.M. Company, Inc. (T.I.M.), an Oklahoma Corporation, has complied with all the statutory requirements, except those imposed by 1 O.S.1981, § 13 (hereinafter § 13),[1] to become a certified bonded abstracter in Oklahoma.

The County Clerk of Tulsa County conducted a public hearing on T.I.M.'s application for a certificate of authority. At the conclusion of the hearing, the county clerk found that T.I.M. had complied with the provisions of § 13 and was capable of producing an abstract in compliance with the applicable laws of the state. The County clerk thereupon issued a certificate of authority to T.I.M.

Appellee, Oklahoma Land Title Association (OLTA), an Oklahoma corporation, filed an appeal in accordance with 1 O.S. 1981, § 16.[2] Other interested parties attempted to join the action over T.I.M.'s

objections based on standing. The district court, after hearing, rejected T.I.M.'s objections and found that OLTA and others had affected a timely appeal of the county clerk's decision. The district court further found that two other abstract companies had timely intervened and should be allowed to proceed and that two more firms should be allowed to intervene as protesting parties.

The district court, sitting without a jury, conducted a trial *de novo* on T.I.M.'s application for a certificate of authority. Testimony introduced at trial established that T.I.M.'s abstract plant consisted of microfilmed *duplications* of all instruments of record affecting real estate on file in the office of the county clerk of Tulsa County and in the office of the court clerk of Tulsa County. In order to utilize the microfilmed records, T.I.M. also made microfilmed *copies* of a variety of indexes used by the offices of the county and court clerks. T.I.M. would not update the indexes; rather it would rely on the work of the two offices. Contestants' two expert witnesses testified that certain instruments affecting real property might not be located through the microfilmed indexes. Additionally, one of the contestants' experts testified that because of the flaw in T.I.M.'s system of indexes, the company could not issue accurate abstracts of title.

1. § 13 states: "In addition to the bond required by Section 8513 O.S. 1931, any person, firm or corporation now engaged in the business of abstracting, desiring to enter into the business of compiling or abstracting titles to real estate in any of the counties of the State of Oklahoma from and after the passage of this Act, *shall have for use in such business an independent set of abstract books or other system of indexes compiled from the instruments of record affecting real estate in the office of the County Clerk, and not copies from the indexes in said office, showing in a sufficiently comprehensive form all instruments affecting the title to real property on file or of record in the office of the County Clerk and the Court Clerk of the county wherein such business is conducted.*" [emphasis added].

2. § 16 states: "The decision of the county clerk granting or refusing to grant the certificate of authority shall not become final for a period

of thirty (30) days from the date thereof, during which time said applicant or any protestant appearing at said hearing may appeal from the decision of the county clerk to the district court of the county in which said application is pending by serving a written notice of appeal upon the county clerk and upon the adverse party or parties contesting the granting of such application, if any, and by procuring from the county clerk a certified transcript of the proceedings and filing the same in the district court within thirty (30) days from the date of said decision with a petition praying for a review of said decision, which petition shall state in simple and concise language the facts relied upon, and said appellant shall also file a bond in the district court in the sum of Two Hundred Dollars ($200.00), conditioned that he will pay all costs of appeal if costs be adjudged against him.
. . ."

The Court held that the statute required a comprehensive tract index showing under a certain tract's legal description all instruments affecting that described tract. *State ex rel. Freeman v. Abstractors Board of Examiners,* 99 Mont. 564, 45 P.2d 668 (1935). At p. 671 the Montana Court stated:

> "It is undisputed in the record that 'the minimum requirement' of the terms used in the Act is 'a *tract index* showing all instruments affecting all pieces of property in the county'. Such requirement increases the protection of the public in relying upon the accuracy of abstracts. 'Index learning turns no student pale, yet holds the eel of science by the tail,' declared Alexander Pope." [emphasis added].

At p. 670 the Montana Court explained:

> "The undisputed evidence received on the trial is to the effect that an abstractor cannot safely rely upon the records and indices in the clerk's office for use in his business, for the reason that, under the statutes, the county clerk merely indexes instruments under the names of the parties. Section 4799, Rev.Codes 1929. A break in the chain of title, by name indices, would mislead the investigator into believing that he had reached the end of the chain. Numerous instances in illustration could be given; a few will suffice."

The Court concluded its explanation by defining the phrase "abstract books or other system of indices" to mean that comprehensive tract index. At 671, the court continued:

> "The indices differ somewhat with different individuals but the system is universal among abstractors, and it is such records, varying according to the individual ideas on the subject, that are known to the men in the business as 'abstract books or other system of indices or records showing in a sufficiently comprehensive form all instruments' affecting the title to each tract of land in the county. This is manifestly the meaning of the terms used by the legislature."

## ISSUES PRESENTED

T.I.M. presents three issues on appeal:

1. Whether the contestants had standing, legal capacity or property interest in prosecuting the action in the district court, and

2. Whether the evidence that an abstract plant comprised of complete microfilm duplications of all indexes and instruments recorded in the offices of the county clerk and court clerk of Tulsa County which affect real estate supports the finding that T.I.M. had failed to comply with the requirements of Section 13; and

3. Whether the district court erred in failing to find that Section 13 violates T.I. M.'s rights under the Fourteenth Amendment of the United States Constitution and under Article II, Section 1 of the Oklahoma Constitution?

## RULINGS

### A. *Standing*

T.I.M.'s assertion that contestants lack standing to prosecute this action in district court, granting a certificate of authority is a complication of three issues.

First, T.I.M. asserts that OLTA, as an educational corporation chartered pursuant to 18 O.S.1981, Ch. 14, does not have the corporate capacity to prosecute litigation in opposition to the grant of a certificate of authority to an applicant. T.I.M. argues the lack of corporate capacity—the commission of an *ultra vires* act—would deprive OLTA of standing to sue and would deprive the district court of subject matter jurisdiction.

Secondly, T.I.M. asserts that 1 O.S.1981, § 16 specifically limits the class of individuals who may appeal the decision of a county clerk on granting a certificate of authority to only those applicants who appear at hearing on the application. T.I.M. argues that the actions of two of the contestants at the September 16, 1981 hearing do not constitute an appearance under Section 16.

Finally, T.I.M. asserts that two other contestants, who did not make appearance at the county clerk's hearing, are excluded from the statutorily limited class of individuals who may appeal a certification decision of a county clerk. 1 O.S.1981, § 16.

■ Initially, it must be noted that T.I.M.'s assertion that OLTA's corporate charter prohibited it from taking part in this litigation is not supported by the record. As such, review of this issue is precluded by the absence of any basis upon which to base a decision. See *Way v. Grand Lake Association, Inc.,* 635 P.2d 1010 (Okl.1981); *Romney v. Davis,* 208 Okl. 81, 253 P.2d 546 (1953).

■ However, to invoke the jurisdiction of the trial court it is only necessary that one of the contestants be found to have had the requisite standing. The record here clearly establishes that appellee Guaranty Abstract Co. caused its appearance to be listed of record in the initial hearing before the county clerk. Such an act clearly demonstrates an acknowledgement of the proceeding and an intention to appear therein. See *Patterson v. Rockwell International,* 665 S.W.2d 96, 99 (Tenn. 1984). T.I.M.'s assertions that more affirmative actions were required to constitute an appearance in the proceeding before the county clerk are without merit. We hold that Guaranty Abstract Co.'s actions constituted an appearance before the county clerk and thus Guaranty had standing to bring the appeal before the district court under 1 O.S.1981 § 16. See *State ex rel. Cartwright v. Oklahoma Tax Commission,* 653 P.2d 1230 (Okl.1982).

**B.** *1 O.S.1981, § 13*

■ The business of abstracting titles to real estate is one which is affected with a public interest. The Legislature, in order to protect the public, may require those desiring to engage in the business of abstracting to meet certain minimum requirements and have adequate equipment to issue accurate abstracts. *Application of Richardson,* supra at 644. The Oklahoma Legislature has promulgated such a re-

quirement in 1 O.S.1981, § 13, see Footnote 1, supra.

The language of Section 13 may be separated into three elements for the purpose of discussion:

1. An application abstracter must have an independent set of abstract books or other system of indexes;

2. The abstract books or other systems of indexes must be compiled from the instruments of record in the office of the county clerk and not copied from the indexes of said office; and

3. The abstract books or other system of indexes must show in sufficiently comprehensive form all instruments affecting the title to real property on file or of record in the offices of the county clerk and court clerk.

The question then is: Does T.I.M.'s abstract plant comply with these statutory requirements.

We answer in the negative.

Requirement of an Independent Set of Abstract Books or other System of Indexes.

■ The term "independent" as used in 1 O.S.1981 § 13, was intended to have a twofold meaning. The first meaning mandates an abstract plant physically separate from the public records of the county clerk. T.I.M.'s application does not run afoul of this requirement. However, the second meaning to be assigned to an "independent set of abstract books or other system of indexes," is based upon the intention of the Legislature that a prospective abstractor have developed its own system of abstracting, or, more properly, of indexing the voluminous information affecting real property filed in the offices of the county clerk and court clerk. Such a system of indexing is the key to utilization of the public recording system and thus the source of the preparation of accurate abstracts. In the present case T.I.M. made no attempt to prepare an independent index.

■ As discussed in the case of *Application of Richardson,* supra, the reasoning

behind this requirement stems from the fact that the index system used by the county clerk is not intended to be used for the purpose of engaging in thorough title searches. Also, as demonstrated by the evidence in the present case, the clerk's index may not be entirely accurate. Thus, the requirement that a prospective abstractor develop an independent system of indexes is entirely reasonable to the purposes of insuring the preparation of accurate abstracts. We therefore now hold that the requirement of section 13 may be satisfied by the applicant's demonstration of possession of an independently developed and current tract index, comprehensively covering all instruments of record in the offices of the county clerk and court clerk. *State ex rel. Freeman v. Abstractors Board of Examiners,* supra.

■ The evidence in this case supports the trial court's finding that T.I.M.'s system for constructing abstracts would not be adequate to produce an accurate abstract for T.I.M. failed to maintain comprehensive tract indices. The record shows that T.I.M. would be unable to locate and include certain instruments in a chain of title. The failure to include such instruments in an abstract has been the basis of an abstractor's liability in a civil litigation. *LVO Federal Credit Union v. Wolfe,* 574 P.2d 293 (Okl.1978). *See also, Hamilton v. Binger,* 162 Kan. 415, 126 P.2d 553 (1947).

Having failed the first tier of 1 O.S.1981, § 16, it is not necessary to review T.I.M.'s attempted compliance with the remaining elements of the test.

C. *Constitutionality of 1 O.S.1981, § 13*

The remaining issue for resolution is whether the district court erred in failing to find that Section 13 violates T.I.M.'s rights under the Fourteenth Amendment of the United States Constitution. We answer in the negative.

■ States have the authority to legislate against "injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or some valid federal law." *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.,* 335 U.S. 525, 69 S.Ct. 251, 257, 93 L.Ed. 212 (1949); *Jack Lincoln Shops v. State Dry Cleaners Board,* 192 Okl. 251, 135 P.2d 332 (1943). The regulation of the abstracting business, to insure that the public is provided with accurate abstracts, is a valid state interest within the regulatory powers of the state. *Lindsey v. State Department of Corrections,* 593 P.2d 1088 (Okl.1979); *Application of Richardson,* supra.

■ In examining due process and equal protection objections to the validity of an economic regulation, the standard of review is not to pronounce the regulatory legislation unconstitutional unless "it is of such a character as to preclude the assumption that it rests on some rational basis ...." *United States v. Cardene Products Co.* 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). The Court will presume that the Legislature had a reasonable basis for enacting a particular economic measure and will also hypothesize reasons for the laws enactment if the Legislature fails to explicitly state the reasons behind the judgment. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ The test for determining the existence of an equal protection violation "requires that the classification rest on some real and not feigned differences; that the distinction have some relevance to the purpose for which the classification is made; and the different treatments are not complete by being disparately arbitrary." *Clegg v. Oklahoma State Election Bd.,* 637 P.2d 103 (Okl.1981). See also, *Thayer v. Phillips Petroleum Co.,* 613 P.2d 1041, 1044 (Okl.1980); *Wilson v. Foster,* 595 P.2d 1329, 1332 (Okl.1979). The Legislature had an ample basis for concluding that there are substantive differences between the abstract plant required by Section 13 and the plant constucted by T.I.M., which will be reflected in the decreased accuracy in the abstracts produced by T.I.M.'s plant. *Ap-*

*plication of Richardson,* supra 184 P.2d at 646.

It is the ruling of this Court that Section 13, as interpreted and applied by the district court, did not violate appellant's rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 7, of the Oklahoma Constitution.

AFFIRMED.

BARNES, C.J., and HODGES, LAVENDER, HARGRAVE and KAUGER, JJ., concur.

OPALA, J., concurs in part and dissents in part.

SIMMS, V.C.J., and WILSON, J., dissent.